O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOUAKHAM SOUVANNAKOUMANE, <br><br> Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | ) Case No. EDCV 10–257-OP <br> ) <br> ) <br> ) MEMORANDUM OPINION; ORDER <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

The Court[1] now rules as follows with respect to the five disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the ALJ misrepresented the record and properly considered the opinion of treating psychiatrist, Dr. Lasala;

(2) Whether the ALJ complied with Social Security Ruling ("SSR") 96-7p and properly considered the type, dosage, effectiveness, and side effects of Plaintiff's medication;

(3) Whether the ALJ properly considered the opinion of treating psychiatrist, Dr. Diamreyan;

(4) Whether the ALJ properly considered Plaintiff's residual functional capacity ("RFC"); and

(5) Whether the ALJ posed a complete hypothetical question to the vocational expert ("VE").

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as

supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A.     The ALJ's Findings.**

The ALJ found that Plaintiff has the "questionably severe impairment" of post-traumatic stress disorder. (Administrative Record ("AR") at 19.) He further found Plaintiff had the RFC to perform a full range of work at all exertional levels, but that he should be limited to routine, repetitive, non-public tasks. (Id. at 21.) The ALJ concluded that Plaintiff would not be able to perform his past relevant work. (Id. at 20.)

Relying on the testimony of the VE to determine the extent to which Plaintiff's limitations, including his inability to communicate in English, eroded the occupational base of unskilled work at all exertional levels, the ALJ determined Plaintiff could perform the requirements of housecleaner (Dictionary of Occupational Titles ("DOT") No. 381.687-018), dry cleaner worker (DOT No. 361.687-018), and hand packer (DOT No. 920.587-018). (AR at 24.) The VE also testified that an ability to communicate in English is not necessary to perform these jobs. (Id. at 25.)

**B.     The ALJ Did Not Misrepresent the Record and Properly Considered Dr. Lasala's Opinion.**

Plaintiff argues that the ALJ misrepresented the treatment notes of Salvador E. Lasala, M.D., Plaintiff's psychiatrist,[3] as they related to Plaintiff's behavior,

---

[3] Dr. Lasala's records span the period from August 8, 2007, to October 28, 2009. (AR at 269-73, 301-04, 309-42.)

3

thoughts and insight, judgment, and reality assessment. (JS at 4.)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as appears to be the case here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

In this case, the ALJ found the following regarding Dr. Lasala's opinion:

> I give little weight to the opinion of Dr. Lasala or to the Work Capacity Evaluation (Mental) completed by Dr. Lasala, which indicates marked and extreme limitation in all domains.[4]   [AR at 327-28.]   It is

---

[4] Extreme is defined as "Severe limitations in this area. No useful ability to function in this area." (AR at 327.) Marked is defined as "Serious limitations in

> unpersuasive and incredible. It lists every mental function as being markedly or extremely limited, clearly giving the impression that the claimant has no useful mental function. If this were accurate, however, the claimant would require institutionalization or the appointment of a keeper; yet the doctors' own records not only fail to support this egregiously exaggerated expression of mental incapacity, but effectively rebut it. Treating records reveal nothing more than subjective, self-reported complaints – primarily insomnia and nightmares. On January 7, 2008, the claimant was doing better, sleep was improving and he had more energy. By September 2, 2008, Dr. Lasala noted that the claimant was stable. Likewise, on December 3, 2008, the claimant had no complaints, was doing "o.k." and was stable with decreased nightmares. On February 6, 2009, Dr. Lasala noted the claimant was still stable, had no complaints, had fair sleep and decreased nightmares. Throughout Dr. Lasala's treating notes at Exhibit B11F [AR at 309-25], the claimant's appearance and behavior were unremarkable, thoughts were normal, speech normal, and <u>insight, judgment and reality assessment were fair</u>. The claimant's mood improved from depressed to neutral. There is no support for Dr. Lasala's florid conclusions; therefore, I can give no weight to this opinion.

(AR at 23-24 (citations omitted) (emphasis added).)

Plaintiff contends that a review of Dr. Lasala's treatment notes shows that contrary to the ALJ's statement emphasized above, fourteen out of the sixteen progress notes actually indicated that Plaintiff's insight, judgment, and reality assessment were poor (JS at 6 (citing AR at 310-22, 324)); only twice did the ALJ

---

this area. The ability to function in this area is severely limited but not precluded." (Id.)

5

find that Plaintiff's insight, judgment and reality assessment were fair (AR at 323, 325). Plaintiff contends, therefore, that the ALJ impermissibly misrepresented the treatment evidence in order to support his decision. (JS at 6.) He also opines that a person with "poor" insight, judgment and reality assessment "would certainly be extremely limited" in a variety of areas such as the ability to understand and remember short and simple instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance, interact appropriately with the public, and so on (id. at 7) – in short, the very categories for which Dr. Lasala indicated Plaintiff showed extreme limitation (AR at 328). Plaintiff also concludes that the fact that he has "poor" insight, judgment and reality assessment makes it virtually certain that he would be absent from work at least three or more days per month – again, one of the conclusions reached by Dr. Lasala in his May 6, 2009, check-box form. (JS at 7; see also AR at 328.)

  Plaintiff provides no authority for these self-serving and conclusory statements. In fact, Plaintiff's conclusions, merely parroting those of Dr. Lasala, fare no better than Dr. Lasala's conclusions, as they suffer the same fatal deficiency. They are unsupported by any evidence of record, including Dr. Lasala's own treatment notes.

  Moreover, Plaintiff's arguments miss the point. The ALJ rejected the May 5, 2009, Work Capacity Evaluation, as unsupported by Doctor's treatment records – he did not necessarily discount the treatment records themselves. Thus, while the treatment records indicate that with the two exceptions noted below, Plaintiff's insight, judgment, and reality assessment were deemed "poor," his self-reported symptoms generally reflected that over time, between January 2008 and May 2009, he was "doing better," with "improving sleep" and "more energy" (AR at 23, 301 (insight deemed fair)); "sleeping better," had "more energy," and decreased anxiety and nightmares (id. at 323 (insight deemed fair)); was stable, had good sleep, and decreased nightmares (id. at 322); was doing better, and sleep

and mood were improving (id. at 317); was stable, less depressed, and sleep was improving (id. at 316); had "no complaints," was "doing ok," and was "stable" with fewer nightmares (id. at 23, 315); was stable, sleeping better, and had improved mood and energy (id. at 314); was stable, with fair sleep, decreased nightmares, and no complaints (id. at 23-24, 313); was stable, with fair sleep, and decreased nightmares (id. at 312); and reported "fair sleep" (id. at 310, 311). In any event, notwithstanding Dr. Lasala's frequent notation of "poor" insight, judgment, and reality assessment, it is clear that on many of those same visits Dr. Lasala nevertheless reported that Plaintiff was stable, with no complaints, and fewer nightmares (id. at 313, 315). As the ALJ found, these notes do not support Dr. Lasala's conclusions that Plaintiff would have extreme or even marked difficulties in a work environment.

Nor do Dr. Lasala's behavioral observations support his "extreme" and "marked" limitations. Dr. Lasala repeatedly found that Plaintiff had unremarkable or clean appearance (id. at 301-04, 310-25); unremarkable or calm behavior (id. at 301, 310-19, 321-25); normal thoughts (id. at 301-04, 310-25); normal abstract thinking (id. at 301, 304, 310, 311, 314, 316, 317, 319-20, 322-25); unremarkable speech (id. at 301-03, 310-25), and that his mood generally improved from "depressed" to "neutral." (See id. at 301-04, 310-25.) An ALJ may properly reject medical opinions that are inconsistent with contemporaneous findings. Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995). Thus, even if the ALJ's statement regarding Dr. Lasala's findings regarding Plaintiff's insight, judgment, and reality assessment misrepresented the record, the error was harmless, as the notes do not support Dr. Lasala's finding that Plaintiff would have extreme or marked difficulties in a work environment. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).

Accordingly, the Court finds that the ALJ provided specific and legitimate

reasons, supported by substantial evidence in the record, to reject Dr. Lasala's conclusions, and any misrepresentation of the treatment notes was, at worst, harmless error. Thomas, 278 F.3d at 957; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 19954); Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). Thus, there was no error.

**C.    The ALJ Did Not Err with Respect to Consideration of Alleged Side Effects of Plaintiff's Medication.**

Over time, Plaintiff has been prescribed Cymbalta, Remeron, Seroquel, and Ambien in varying dosages. (See AR at 330-42.) Plaintiff provides a listing of potential side effects for each of these drugs from *WebMD.com* and complains that the ALJ failed to consider the "related side effects" of these medications. (JS at 14-16.) Plaintiff claims, therefore, that the ALJ failed to properly evaluate and consider the type, dosage, effectiveness and side effects of these medications which "can significantly impact the plaintiff's ability to perform and sustain full time competitive work . . ." (Id. at 16.) The Court does not agree.

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications . . ." Id. at 818. When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications. See Varney, 846 F.2d at 545; see also Muhammed v. Apfel, No. C 98-02952 CRB, 1999 WL 260974, at *6 (N.D. Cal. 1999).

Specifically, in his decision, the ALJ stated, "[t]here are no side effects from medication (Exhibit B8F, p. 1)." (AR at 22.) Plaintiff contends that the ALJ improperly made this determination based on only one January 7, 2008, report

from Dr. Lasala indicating that there were no side effects reported. (JS at 7 (citing AR at 301).) He claims that in an additional report, dated November 2, 2007, Dr. Lasala reported that Plaintiff "was having side effects and that they discussed the risky[5] benefits of medication especially sedation, decreased mental alertness, dizziness, etc." (Id. (citing AR at 303).) Plaintiff misstates the record.

On November 2, 2007, Plaintiff reported that he was feeling "unmotivated," and "withdrawn," and that his sleep had decreased. (AR at 303.) Dr. Lasala prescribed the sleeping tablet Ambien, apparently for the first time, and otherwise merely noted that he discussed with Plaintiff the possible side effects of his various medications, and that those side effects might include sedation and a decrease in mental alertness. (Id.) There is no indication that beyond this Plaintiff was experiencing any other of the myriad of potential side effects these medications might cause. In fact, with the exception of this one record (AR at 303), the treatment records specifically indicate that Plaintiff was experiencing "No Side Effect" from his medications. (Id. at 301-02, 310-25); see also Thomas, 278 F.3d at 960 (alleged side effects need not be considered where no objective evidence supported allegations).

There also is no other indication in the record that Plaintiff ever was experiencing any side effects severe enough to impair or interfere with his ability to work. See, e.g., Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (side effects properly excluded because "no evidence of side effects severe enough to interfere with . . . ability to work," even though "[t]here were passing mentions of the side effects" in "some of the medical records"); Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (no clinical evidence that narcotics impaired ability to

---

[5] The Court does not adopt this interpretation of Dr. Lasala's note and finds that it might just as easily read "risks vs. benefits," "risks & benefits," or "risk/benefits." The general idea is the same, however, and the actual wording makes no difference in the Court's analysis.

work).

Accordingly, the Court finds there was no error in the ALJ's failure to further mention the alleged side effects of Plaintiff's medications.

**D.      The ALJ Properly Considered the Opinion of Dr. Diamreyan.**

In a June 17, 2005, Psychiatric Evaluation, Plaintiff's then-treating psychiatrist, Ochuko Diamreyan, M.D.,[6] noted among other things, the following: Plaintiff's general appearance was withdrawn and dejected; his speech was "mono[tone]"; his thought process was linear; Plaintiff reported paranoid thoughts ("people getting him"); Plaintiff reported mood swings but no mania; Plaintiff reported hallucinations, and was delusional; his mood was depressed; his memory, intelligence, and concentration and attention span were "imp[aired]"; and his insight and judgment were poor. (AR at 234-36.) Dr. Daimreyan diagnosed Plaintiff with PTSD and major depressive disorder, single, severe[7] with a global assessment of functioning ("GAF") score of 40.[8]  (Id. at 236.)

In his decision, the ALJ stated:

> The claimant was diagnosed with post-traumatic stress disorder and a major depressive disorder by Dr. Diamreyan (Exhibit B1F) and Dr. Lasala (Exhibits B3F and B8F). Dr. Diamreyan annotated impaired memory, psychomotor retardation, anxiety and depression (Exhibit B1F).

---

[6] Dr. Diamreyan's records span the period from June 17, 2005, to July 16, 2007. (AR at 223-36.)

[7] There is another illegible notation next to this diagnosis. (AR at 236.)

[8] A GAF score of 40 is described as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Ass'n ed., 4th ed. 2000) ("DSM IV").

(AR at 23.)

Plaintiff contends the ALJ failed to properly consider the opinions of Dr. Diamreyan from this June 2005 Psychiatric Evaluation. (JS at 18-19.) He also claims the ALJ failed to properly consider Dr. Diamreyan's progress notes from 2005 (AR at 233), 2006 (id. at 228, 232), and 2007 (id. at 223, 226), which indicated that Plaintiff had insomnia, nightmares, anxiety, headaches, depression, and was withdrawn. (JS at 20.) Specifically, Plaintiff contends the ALJ improperly failed to state whether he accepted or rejected Dr. Diamreyan's findings, never mentioned the GAF score of 40, or the fact that Plaintiff's insight and judgment were poor, failed to explain the weight he afforded to Dr. Diamreyan's findings, and failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Diamreyan's findings. (Id. at 18, 20-21.) The Court does not agree.

With respect to the ALJ's failure to mention the GAF score, GAF scores reflect the "clinician's judgment of the individual's overall level of functioning" and include "psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome." DSM-IV 32. The Social Security regulations do not require an ALJ to take the GAF score into account in determining the extent of an individual's disability; while the score may help the ALJ assess the claimant's disability, it is not essential and the ALJ's failure to rely on the GAF does not constitute an improper application of the law. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (while a GAF score may be of considerable help to the ALJ, it is not essential; the ALJ's failure to reference the GAF score, standing alone, does not make the ALJ's findings inaccurate).

Accordingly, since the ALJ is not required to take the GAF score into account in determining disability or even to mention it, the ALJ's failure to

mention Dr. Diamreyan's GAF assessment was not error.

Plaintiff also argues that the ALJ should have articulated specific reasons for rejecting Dr. Diamreyan's June 2005 opinion of disability. (JS at 20-21.) However, an ALJ is not required to "discuss every piece of evidence" so long as the decision was supported by substantial evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Rather, the ALJ need only explain why "significant probative evidence has been rejected." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393 (9th Cir. 1984).

Preliminarily, the Court notes that the ALJ actually concurred with, and, therefore, did not reject, Dr. Diamreyan's diagnosis of PTSD.

Additionally, the Ninth Circuit has found that medical reports that are most recent are more highly probative. Osenbrock, 240 F.3d at 1165 (citing Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)) (medical evaluations even prepared several months before the hearing in a case where the claimant had a worsening condition were not substantial evidence sufficient to rebut more recent conclusions by a treating doctor). The report at issue here was completed in June 2005, four years prior to Dr. Lasala's report containing remarkably similar conclusions, which the ALJ fully discussed and discounted. Dr. Diamreyan's June 2005 report simply was not probative.

Even if there was error, it was harmless. See Curry, 925 F.2d at 1131. Dr. Diamreyan's June 2005 report was completed five months earlier than his November 2005 report, which had been properly discounted by the prior ALJ, and by incorporation, the ALJ herein, and four years prior to Dr. Lasala's May 2009 report, which the ALJ fully discussed and, as determined above, properly discounted. The reasons stated by the ALJ for accepting the prior ALJ's rejection of Dr. Diamreyan's November 2005 disability opinion apply with equal force to Dr. Diamreyan's virtually identical "opinions" as expressed in his report from five months earlier. Moreover, the former ALJ noted that Dr. Diamreyan's own

progress notes failed to support his November 2005 "egregiously exaggerated expression of mental incapacity." (AR at 50.) Those notes, which include at least several of the same notes relied on by Plaintiff herein in regard to the June 2005 report, indicated that Plaintiff only had "mild" depression which had decreased with treatment, was sleeping "well," was not experiencing side effects from his medication, and was not hearing voices or exhibiting paranoia, and failed to support the conclusion of extreme or marked limitations. (Id.)

In Magallanes, 881 F.2d at 755, the Ninth Circuit held that an ALJ need not recite a magical "incantation" expressly rejecting a physician's opinion. Rather, a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." Id. As such, it is proper for a reviewing court to read an ALJ's discussion of one physician and draw inferences relevant to other physicians "if those inferences are there to be drawn." Id. In the present case, the rejection of Dr. Lasala's exaggerated conclusions based on treatment notes that failed to support those findings, and the ALJ's adoption of the prior ALJ's rejection for the same reasons of Dr. Diamreyan's virtually identical November 2005 conclusions,[9] all lead to a proper inference likewise supporting the rejection of Dr. Diamreyen's June 2005 conclusions.

Accordingly, the Court finds there was no error in the ALJ's failure to make further mention of Dr. Diamreyan's June 2005 report, and, even if there was error, it was harmless.

**E.      The ALJ Properly Considered Plaintiff's RFC.**

In his decision, the ALJ held the following regarding Plaintiff's RFC:

After careful consideration of the entire record, the undersigned finds

---

[9] As the current ALJ found in this decision, "[t]here has been no documented deterioration of the claimant's mental or physical health since the prior adverse . . . decision of January 10, 2007, and I adopt [the prior ALJ's] findings entirely." (AR at 17.)

>     that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform routine, repetitive, nonpublic tasks.

(AR at 21.)

Plaintiff contends the ALJ omitted from the RFC Dr. Lasala's opinion that Plaintiff's insight, judgment, and reality assessment were poor (AR at 310-22, 324), and Dr. Diamreyan's opinion that Plaintiff's insight and judgment was poor, that he had PTSD and major depressive disorder, and a GAF score of 40 (id. at 234-36). (JS at 25.) He argues that proper consideration of these opinions "would certainly impact plaintiff's ability to function and sustain full-time competitive employment." (Id. at 26.)

Preliminarily, the ALJ did not disregard Dr. Diamreyan's opinion regarding PTSD, indeed, he adopted it. Moreover, as discussed above, the ALJ properly rejected the ultimate conclusions of these two psychiatrists, and any misstatement of Dr. Lasala's treatment notes was harmless error.

In his decision, the ALJ also noted that State agency physicians had specifically reviewed and adopted the prior ALJ's January 10, 2007, finding that Plaintiff "could perform simple, repetitive tasks in a nonpublic environment, understand, remember, and carry out simple instructions, respond appropriately to others and to usual work situations, and that his attention, concentration, persistence, and pace are adequate for nonpublic, simple repetitive tasks. (AR at 23.) He also adopted these findings. (Id.); see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (stating that State agency medical and psychological consultants and other program physicians and psychologists are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation"). Unlike Drs. Lasala and Diamreyan, the State agency physicians did in fact render an opinion concerning what Plaintiff could do

on a sustained basis with his impairments. By finding the limitations that he did, the ALJ implicitly gave some credence to the findings of these psychiatrists regarding Plaintiff's insight, judgment, and reality assessment.

As discussed, the ALJ need only explain why "significant probative evidence has been rejected," Vincent, 739 F.2d at 1395; thus, there is no requirement for the ALJ to discuss every finding contained in a doctor's notes. Moreover, Plaintiff provides no evidence that the ALJ's RFC, limiting Plaintiff to simple, repetitive tasks in a nonpublic environment, is inconsistent with someone whose insight, judgment, and reality assessment might be deemed "poor." Thus, the Court finds that any error was harmless.

**F.     The Hypothetical Posed to the Vocational Expert Was Proper.**

Plaintiff contends that the ALJ erred because the hypothetical questions posed to the VE failed to take into account any mention of the impairments and functional limitations determined by Drs. Diamreyan and Lasala, including that his insight, judgment and reality assessment were poor, his affect blunted, his mood depressed, and his abstract thinking impaired. (JS at 29.) The Court disagrees.

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). Thus, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock, 240 F.3d at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be based on

evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

As the Court concluded above, the record evidence did not support the extreme conclusions of Dr. Diamreyan or Dr. Lasala. Accordingly, the ALJ was not obligated to include those limitations in his hypothetical to the VE. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove."). Moreover, the ALJ gave Plaintiff the benefit of the doubt when he found him limited to simple, repetitive tasks in a nonpublic environment. Thus, the Court finds that the ALJ presented a complete hypothetical question to the VE, and there was no error.

## IV.
## **ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: October 22, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge